NUMAN SCHWARTZ, Respondent, *v.* THE CHATHAM AND
PHENIX NATIONAL BANK OF THE CITY OF NEW YORK,
Appellant.

Second Department, November 22, 1918.

**Libel — return by bank of checks drawn by plaintiff with word
" forgery " written upon face — proof justifying verdict for plain-
tiff — damage — when punitive damages not recoverable — verdict
reduced.**

Where the plaintiff, applying at his bank of deposit for a check book, was
given a book which contained at the foot of the check an indistinct
impression from a rubber stamp intended for the official signature of a
member of the " Jefferson Branch Clerks' Loan Association," with which
association the plaintiff had no account, but the plaintiff in good faith
signed such checks with his own name and the defendant, on presentment,
returned the same to the payees with the word " forgery " written across
the face, the jury were justified in finding that the defendant, sued for
libel, made a charge of forgery against the plaintiff.

There was a charge of forgery against the plaintiff, although his signature
was genuine.

However, as no malice on the part of the defendant appeared and its officers
admitted their mistake and offered to write to the payees, there was no
basis for punitive damages, and a judgment for the plaintiff will be
reversed, unless he consents to reduce a verdict of $6,000 to $3,000.

APPEAL by the defendant, The Chatham and Phenix National
Bank of the City of New York, from a judgment of the Supreme
Court in favor of the plaintiff, entered in the office of the
clerk of the county of Kings on the 14th day of March, 1918,
upon the verdict of a jury for $6,000 in a libel action, being
$1,000 on each of six counts; and also from an order entered
in said clerk's office on the 13th day of March, 1918, denying
defendant's motion for a new trial made upon the minutes.

The judgment was amended by an order dated April 6,
1918, so as to state correctly the corporate name of the
defendant.

*Malcolm R. Lawrence* [*Frank R. Lawrence* with him on the
brief], for the appellant.

*Frank W. Holmes,* for the respondent.

PUTNAM, J.:

The Century Bank had a branch, called the " Jefferson Branch," located at Grand street and the Bowery. It had united with a smaller concern called the Mutual Alliance Trust Company. This consolidation was on January 13, 1915. The Century Bank has been absorbed by the Chatham and Phenix National Bank — the above-named defendant.

Plaintiff, a married man, aged about forty, had been twenty-two years with the Singer Sewing Machine Company. Among side lines of business were the National Veal Company and the Eagle Amusement Company, in connection with which he had a checking account since 1907 in his individual name with the Mutual Alliance Trust Company. He had also obtained loans from that trust company, sometimes for as much as $2,000.

With other depositors, plaintiff received notice of this merger with the Century Bank, but was informed that he could keep on using the same deposit book and the same check book.

Plaintiff continued his business, making such a deposit with the receiving teller on Saturday, January 16, 1915. As his old check book was used up, he asked for a new one. The teller handed him out a pocket check book. It was not a new blank check book. The first pages had been already used and seventeen forms of checks torn out. At the foot of the first blank checks, in indistinct purple print, apparently from a rubber stamp, was impressed " Jefferson Branch Clerks' Loan Association," intended to have some official signature beneath. Plaintiff did not regard this as peculiar. Having entered his balance, he proceeded to draw his usual Saturday checks for small sums. They were numbered from 700 to 712. On the lower signature line he wrote the name " N. Schwartz," which was the signature he had previously used. In a few days these checks came back with a return slip on which was marked the printed words " Signature Incorrect " and the word " Forgery " written across the face. The check No. 703, given to the General Film Company for ten dollars, was the first one so returned.

Plaintiff was asked to call on the General Film Company, and did so on January twenty-first (Thursday), when he was

Second Department, November, 1918.        [Vol. 185.

told that another of his checks had come back bearing the word "Forgery;" also that the bank had denied that they had any such account. The film company had written plaintiff that day after this second returned check, in rather sharp terms.

When plaintiff went to the Century Bank, the receiving teller, whom plaintiff knew, said he was not aware of this difficulty. He asked plaintiff to bring in his checks.

On January twenty-third plaintiff came to the bank, bringing four of these returned checks. Plaintiff was then told that he had no account with the Jefferson Branch Clerks' Association. Plaintiff said he had not regarded that lettering, supposing it was a designation of the Jefferson Branch. Plaintiff was then directed to see the paying teller. The paying teller (who did not know plaintiff) also reminded him that he was not a depositor of the Jefferson Branch Clerks' Association. Plaintiff pointed out that he had signed as N. Schwartz, and did not pretend to be a treasurer or a president. The paying teller said, according to plaintiff: " It is a forgery. We put it on there, and we can't change it." He referred plaintiff to Mr. Clinkunbroomer, who had been vice-president of the Mutual Alliance Trust Company and was then cashier in this Century Bank. He had long known plaintiff, and had made him small loans. After plaintiff had stated his grievance, he testified that Mr. Clinkunbroomer said: " It is a mistake, we will call that back." He said: " I am going to write a letter to these people — it is a mistake." After plaintiff had testified that he had shown the checks to Mr. Clinkunbroomer, he was asked: " Q. Did he say anything about what was written on them? A. He saw them marked forgery. He said, that is what it is, he said. Q. Did he say anything about who did it? A. Well, he said we did it."

Mr. Clinkunbroomer denies that he admitted the bank had put the word " Forgery " on these checks. Plaintiff had not noticed this stamp at the foot of the checks before the bank teller called attention to it on January twenty-first. He supposed the lettering was merely to designate that branch of the bank.

Eight witnesses were called showing in detail how the other checks, set forth in the counts of the complaint, had

been repudiated and returned with the same characterization of "Forgery." Thereby he showed the publication of the libel.

Defendant proved the consolidation with the Mutual Alliance Trust Company, and the sending out of a notice to their customers.

Proof was given of an association of bank clerks called "Jefferson Branch Clerks' Loan Association," with a division of profits at the end of the year. Plaintiff, of course, was not a member.

The mode of paying checks that came through the Clearing House was described. Such a volume of checks are divided alphabetically among different clerks or bookkeepers, and do not come under the paying teller's notice. Where the bank on whom the check has been drawn considers the check irregular, the custom is to attach a return slip on which the objection is indicated, as already stated.

While the answer denied that defendant wrote the word "Forgery" upon these checks, it pleads a custom to mark on returned checks the reason for the return of a check unpaid, so as to protect the Clearing House and associated banks "as well as the payees and endorsers of said check. That in fact said aforementioned check was so presented through such source and was returned through the same source *with the writing thereon* in accordance with said custom and for such purpose aforementioned."

Both as matter of pleading and of testimony, the word "Forgery" was evidently written on these checks by defendant's employees. This action amounted to a charge of forgery against the plaintiff; at least, on this evidence, the jury could properly find that it would be so understood by the persons to whom the returned checks passed.

Here appellant urges a fine distinction. Plaintiff being the drawer of his own checks, that the imputation of forgery would not be against *him*, but would only be understood that some unknown person had written that name. Of course, the defamatory words must point to the plaintiff. But would not a business man receiving back from the bank a returned check he had taken as good, with the word "Forgery" on it, naturally infer that such a charge was made against the

drawer of the check? Placing a genuine signature on an instrument may be a forgery. Had it been the intent to draw against the funds of this Jefferson Branch Clerks' Association, it would amount to such a crime, and that was what this charge would naturally suggest.

I think the privilege covered no more than such use of the return slip customarily attached to checks that are refused payment. The last printed wording " Signature Incorrect," which was checked in ink, sufficiently set forth the ground for returning the check. To write across the face of the check the word " Forgery " was characterization not required for any proper protection of the defendant or the collecting bank.

This court has recognized that the amount of damages in actions for libel or slander are peculiarly for the jury, and cannot be standardized. But here was a series of blunders arising out of peculiar circumstances. No malice appeared. When informed of the wrong, the cashier admitted the mistake and offered to write a letter to the people who had received the returned checks. This plaintiff declined. We have no basis for anything like punitive damages. Such a charge in a public manner would be different. In returning checks the bank attributed them as drawn on an account where plaintiff had no right to draw. Such an error, though without legal excuse, is not like ordinary libels. Even where punitive damages are recoverable, an excessive verdict may be reduced. (*Holmes* v. *Jones*, 121 N. Y. 467; *Riker* v. *Clopton*, 83 App. Div. 310.) Here was no wanton attack. The heavy punishment of this verdict is out of proportion to the embarrassment and injury by these mistakes. We are agreed that the verdict should be reduced to $500 on each count, making a total for the six counts of $3,000.

I advise, therefore, that the judgment and order appealed from be reversed and a new trial granted, costs to abide the event, unless within twenty days plaintiff stipulate to reduce the amount of the verdict to $3,000, in which event the judgment as so modified, and the order, are affirmed, without costs.

Thomas, Mills, Rich and Kelly, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event, unless within twenty days plaintiff stipulate to reduce the amount of the verdict to $3,000, in which event the judgment as so modified, and the order, are unanimously affirmed, without costs.